APR 20 2005

## IN THE DISTRICT COURT OF THE UNITED STATES
### FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO. 3:05 CR 112-A |
| | ) | |
| v. | ) | [18 USC 922(g)(1); |
| | ) | 18 USC 924(a)(2); |
| PATRICK LEMUEL BASS | ) | 18 USC 924(e); |
| | ) | 21 USC 844(a)] |
| | ) | |
| | ) | INDICTMENT |

The Grand Jury charges:

### COUNT 1

On or about February 7, 2004, in Lee County, within the Middle District of Alabama,

PATRICK LEMUEL BASS,

defendant herein, having been convicted on or about the dates and in the courts set forth below of

the offenses set forth below, all felonies punishable by imprisonment for a term exceeding one year:

| CONVICTION DATE | COURT | CASE NUMBER | OFFENSE |
|---|---|---|---|
| March 26, 1990 | Circuit Court of the Third Judicial Circuit in and for Taylor County, Florida | 90-101-CF | Dealing in Stolen Property |
| September 10, 2001 | Circuit Court of Russell County, Alabama | 2001-446 | Distribution of Controlled Substance |
| September 10, 2001 | Circuit Court of Russell County, Alabama | 2001-447 | Possession/Receipt of Controlled Substance |
| September 10, 2001 | Circuit Court of Russell County, Alabama | 2001-448 | Possession of Marijuana (1st Degree) |

did knowingly possess in and affecting commerce a firearm, that is, a Jennings Firearms, Bryco 38,

.380 pistol, serial number 501139, in violation of Title 18, United States Code, Sections 922(g)(1),

924(a)(2), and 924(e).



<u>COUNT 2</u>

On or about February 7, 2004, in Lee County, within the Middle District of Alabama,

PATRICK LEMUEL BASS,

defendant herein, did knowingly possess methamphetamine, a Schedule II Controlled Substance, in

violation of Title 21, United States Code, Section 844(a).

A TRUE BILL:

_____
Foreperson

_____
Andrew O. Schiff
Assistant United States Attorney

2

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 3:05cr112-WHA |
| | ) | |
| PATRICK LEMUEL BASS | ) | |

## PLEA AGREEMENT

DEFENSE COUNSEL:              CHRISTINE FREEMAN

ASSISTANT U.S. ATTORNEY:      ANDREW O. SCHIFF

## COUNT AND STATUTE CHARGED:

Count 1          18 U.S.C. § 922(g)(1)
                 Felon in possession of a firearm.

## COUNT PLEADING PURSUANT TO PLEA AGREEMENT:

Count 1          18 U.S.C. § 922(g)(1)

## PENALTIES BY COUNT – MAXIMUM PENALTY:

Count 1          18 U.S.C. § 922(g)(1)
                 NMT 10Y or
                 NMT $250,000 or both;
                 NMT 3Y SUP REL;
                 $100 AF;
                 VWPA.

                 IF CONVICTED UNDER 18 USC 924(e)(1)
                 (Armed Career Criminal)
                 NMT Life, NLT 15Y,
                 NMT $250,000, or both;
                 NMT 5Y SUP REL;
                 $100 Assessment Fee;
                 VWPA



**ELEMENTS OF THE OFFENSE:**

18 U.S.C. § 922(g)(1)

First:          The defendant knowingly possessed a firearm or ammunition in or affecting interstate commerce, as charged; and

Second:         Before the defendant possessed the firearm or ammunition, the defendant had been convicted in a court of a crime punishable by imprisonment for a term in excess of one year, that is, a felony offense.

*****************************************************************************

Andrew O. Schiff, Assistant United States Attorney, and Christine Freeman, attorney for the defendant, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(C), Federal Rules of Criminal Procedure, as Amended, have, with the authorization of the undersigned defendant, heretofore entered into discussions with a view towards reaching a pretrial conclusion of the charges pending in the Indictment herein and a Plea Agreement has been reached by said parties. The plea is being submitted to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and 11(c)(1)(C), and the parties understand that, if the terms of the Plea Agreement are not accepted by the Court, the defendant will be allowed to withdraw the defendant's plea of guilty and proceed to trial. If the Court accepts this agreement, however, and defendant thereafter breaches this agreement, his guilty plea may not be withdrawn.

### GOVERNMENT'S PROVISIONS

1.          Upon entering a plea of guilty by the defendant to the offense charged in Count 1 of the Indictment, the attorney for the Government will do the following:

a.          The Government will agree that a 2-level reduction in the applicable offense level pursuant to U.S.S.G. § 3E1.1(a) for the defendant's acceptance of responsibility is appropriate,

so long as the defendant does not obstruct justice or otherwise fail to accept responsibility for the offense conduct.

   b.   Because defendant timely notified authorities of his intention to enter a plea of guilty, the government will move for an additional one-level reduction in defendant's offense level. See U.S.S.G. § 3E1.1(b)(2).

   c.   The sentence of imprisonment in this case shall run concurrently to the sentence imposed with respect to any pending charges in Lee County, Alabama, Troop County, Georgia, or Meriweather County, Georgia, and his sentence on those charges shall not exceed 180 months.

   d.   In the event the defendant is being sentenced pursuant to 18 U.S.C. § 924(e), the government agrees that the appropriate sentence is a term of imprisonment of 180 months. Both parties reserve all arguments concerning the applicability of section 924(e).

   e.   In the event the defendant is being sentenced pursuant to 18 U.S.C. § 924(a)(2), the government agrees that the defendant shall, subject to the statutory maximum of 10 years imprisonment, be sentenced within the applicable guideline range. Except as provided in paragraph 1(a) and 1(b) of the government's provisions, both parties reserve all arguments with respect to the calculation of the offense level and the defendant's criminal history. However, neither the United States nor the defendant shall move for an upward or downward departure from the applicable guideline range or for a variance from the range pursuant to *Booker*.

  2.   At sentencing, the government will move to dismiss Count 2 of the indictment.

3.      The government reserves the right to inform the Court and the Probation Office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses and the defendant's background.

## DEFENDANT'S PROVISIONS

4.      The defendant agrees to plead guilty to Count 1 of the Indictment.

5.      The defendant agrees with the sentencing provisions set forth in paragraph 1 of the government's provisions.

6.      The defendant agrees to forfeit all firearms in his possession.

7.      The defendant agrees not commit any State, local or federal offenses.

## FACTUAL BASIS

8.      On or about February 7, 2004, in Lee County, the defendant, having been convicted on or about the dates and in the courts set forth below of the offenses set forth below, all felonies punishable by imprisonment for a term exceeding one year:

| CONVICTION DATE | COURT | CASE NUMBER | OFFENSE |
|---|---|---|---|
| March 26, 1990 | Circuit Court of the Third Judicial Circuit in and for Taylor County, Florida | 90-101-CF | Dealing in Stolen Property |
| September 10, 2001 | Circuit Court of Russell County, Alabama | 2001-446 | Distribution of Controlled Substance |
| September 10, 2001 | Circuit Court of Russell County, Alabama | 2001-447 | Possession/Receipt of Controlled Substance |
| September 10, 2001 | Circuit Court of Russell County, Alabama | 2001-448 | Possession of Marijuana (1st Degree) |

did knowingly possess in and affecting commerce a firearm, that is, a Jennings Firearms, Bryco 38,

.380 pistol, serial number 501139.

### DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

9.    Understanding that 18 U.S.C. § 3742 provides for appeal by a defendant of the

sentence under certain circumstances, the defendant expressly waives any and all rights conferred

by 18 U.S.C. § 3742 to appeal the sentence. Defendant further expressly waives the right to appeal

the sentence on any other ground and waives the right to attack the sentence in any post-conviction

proceeding.

The government does not waive its right to appeal any order dismissing the Indictment,

vacating a sentence, or otherwise terminating the prosecution at any stage of the proceedings.

Further, the parties agree that nothing in this agreement shall affect the government's right and/or

duty to appeal as set forth in 18 U.S.C. § 3742(b). However, if the government appeals, the

defendant may appeal or bring a post-conviction proceeding, on any ground.

### DEFENDANT'S UNDERSTANDING AND ACKNOWLEDGMENT

10.    The defendant, before entering a plea of guilty to Count 1 of the Indictment as

provided for herein by said Plea Agreement, advises the Court that:

a.    The discussions between the attorney for the government and the attorney for

the defendant towards reaching an agreed plea in this case have taken place with the defendant's

authorization and consent.

b.    Defendant acknowledges that a breach of this federal plea agreement will not

entitle him to withdraw his guilty plea in this case. Defendant understands and acknowledges that

defendant's guilty plea will remain in full force and effect upon any breach of this agreement by the defendant.

   c.  The defendant further understands that, pursuant to 18 U.S.C. § 3013, said $100.00 assessment fee is to be paid by the defendant on the date of sentencing. The defendant will make an honest, good faith effort to pay said fee as directed by the Financial Litigation Section of the United States Attorney's Office. The defendant further understands that by completing the financial statement, the defendant is representing that it is true and accurate to the best of the defendant's information, knowledge, and belief.

   d.  The defendant understands that the defendant has a right to be represented by an attorney at every stage of the proceedings against the defendant herein and is represented by the defendant's undersigned attorney.

   e.  The defendant understands that the defendant has the right to plead not guilty and has the right to be tried by a jury and, at a trial thereof, has the right to the assistance of counsel, the right to confront and cross-examine witnesses against the defendant, the right to call witnesses in the defendant's own behalf, and the right not to be compelled to incriminate the defendant, and that if the defendant enters a plea of guilty herein, there will not be a further trial of any kind and that by the entry of such a plea, the defendant waives the right to a trial by jury or to a trial before the Court.

   f.  The defendant further understands that in entering a plea of guilty herein, the Court may ask questions about the offense to which the plea is entered and further understands that if the defendant answers these questions under oath, on the record, and in the presence of counsel,

6

which questions and answers would be recorded, that the answers may later be used against the defendant in a prosecution for perjury or false statement if the answers are not truthful.

g.     The Defendant further understands and advises the Court that the Plea Agreement as set forth herein and the plea to be entered by the defendant as a result thereof is voluntary on the defendant's part and is not the result of any force or threats or of any promises apart from the aforesaid Plea Agreement. The defendant further advises the Court that the Plea Agreement set forth herein is the result of prior discussions between the attorney for the government and the attorney for the defendant, all conducted with the defendant's authorization, knowledge, and consent.

h.     The defendant further advises the Court that the defendant's understanding of this Plea Agreement is as set forth in this document.

i.     The defendant further advises the Court that it is understood that the government can only make a recommendation which is not binding on the Court , but if the sentence imposed by the Court is more severe than the maximum sentence permitted by the plea agreement, the defendant will have the right to withdraw his plea.

j.     The defendant further advises the Court that the defendant understands and has been advised that evidence of a plea of guilty, later withdrawn or an offer to plead guilty to the crime charged in the Indictment herein, or of statements made in connection with and relevant to said plea or offer to plead, shall not be admissible in any civil or criminal proceedings against the defendant. However, the defendant does understand that evidence of a statement made in connection with and relevant to a plea of guilty, later withdrawn, or an offer to plead guilty to the crimes charged in the Indictment herein, is admissible in a criminal proceeding for perjury or false statement when

7

the statement was made by the defendant under oath, on the court record, and in the presence of counsel.

       k.     The defendant is satisfied that defense counsel has been competent and effective in representing defendant.

    11.    The undersigned attorneys for the government and for the defendant represent to the court that the foregoing Plea Agreement is the agreement of the parties that has been reached pursuant to the Plea Agreement procedure provided for in Rule 11, Federal Rules of Criminal Procedure, as Amended. The attorney for the defendant further advises the Court that the defendant has been advised of the nature of the charge to which the foregoing described plea is to be offered, and that the defendant has been advised of the defendant's right to plead not guilty and to be tried by a jury on all issues herein; of the maximum possible penalty provided by law; that by the entering of a plea of guilty as aforesaid, the defendant waives the right to be tried by a jury or by the Court, waives the right to confront and cross-examine witnesses against the defendant and the right not to be compelled to incriminate the defendant; and that if the defendant pleads guilty, there will not be a further trial of any kind. Further, the defendant has been advised that if the defendant pleads guilty, the Court may ask questions about the offense to which the defendant has pleaded and that if the plea is rejected or later withdrawn, that the answers to such questions may not be used against the defendant in a civil or criminal proceeding, but that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement if the answers are not truthful.

    12.    The defendant understands that the U.S. Probation Office will prepare a presentence investigation report for the Court. The Probation Officer will consider the defendant's conduct related to the offense to which the plea is offered, as well as the defendant's criminal history. The

8

offense level or criminal history category, as calculated by the Probation Officer and determined by the court, may differ from that projected by defendant's counsel or the U.S. Attorney.

This ___ day of June, 2006.

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

Andrew O. Schiff
Assistant U.S. Attorney
Deputy Chief, Criminal Division

I have read the foregoing Plea Agreement, understand the same, and the matters and facts set forth therein accurately and correctly state the representations that have been made to me and accurately set forth the conditions of the Plea Agreement that has been reached.

IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" PARAGRAPH ABOVE ARE TRUE AND CORRECT AND THAT I AM SATISFIED THAT I HAVE RECEIVED COMPETENT ADVICE AND REPRESENTATION FROM MY DEFENSE COUNSEL, CHRISTINE FREEMAN.

_____
PATRICK LEMUEL BASS/DEFENDANT

6/4/2006
_____
Date

_____
Christine Freeman
Attorney for Defendant

6/14/06
_____
Date

10

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
### PROBATION OFFICE

**LESLIE PRIM HOPEK**
CHIEF PROBATION OFFICER

**R. DWAYNE SPURLOCK**
DEPUTY CHIEF PROBATION OFFICER

Frank M. Johnson Jr.
Federal Courthouse Complex
One Church Street
Montgomery, AL 36104



**SCOTT WRIGHT**
SUPERVISORY PROBATION OFFICER
*INVESTIGATIVE UNIT*

**DAVID RON THWEATT**
SUPERVISORY PROBATION OFFICER
*SUPERVISION UNIT*

Voice 334/954-3243
FAX  334/954-3230

August 24, 2006

Attorney Christine Freeman
Federal Defenders Program, Inc.
201 Monroe Street, Suite 407
Montgomery, AL 36104

Re:     U.S.A. v. BASS, Patrick Lemuel
        Docket Number: 3:05cr112-WHA
        Sentencing Date: September 7, 2006

Attorney Freeman:

Enclosed is the revised Presentence Report and Addendum completed in the case of the above-named defendant.

Sincerely yours,

Terrence N. Marshall
United States Probation Officer

TNM/lm

Enclosure

cc:     Mr. Andrew O. Schiff
        Assistant U.S. Attorney

        Mr. Patrick Lemuel Bass (Federal Inmate)
        c/o Montgomery City Jail
        P. O. Box Drawer 159
        Montgomery, Alabama 36101



## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| V. | ) PRESENTENCE INVESTIGATION REPORT |
| | ) |
| | ) Docket No.:  3:05cr112-WHA |
| PATRICK LEMUEL BASS | ) |

---

**Prepared For:**          Honorable W. Harold Albritton
                           Senior United States District Judge

**Prepared By:**           Terrence N. Marshall
                           U.S. Probation Officer
                           Montgomery, Alabama
                           (334) 954-3243

**Assistant U.S. Attorney**                    **Defense Counsel**
Andrew O. Schiff                               Christine Freeman
One Court Square                               Federal Defenders Program, Inc.
Suite 201                                      201 Monroe Street, Suite 407
Post Office Box 197                            Montgomery, AL 36104
Montgomery, AL 36101-0197                      (334) 834-2099
(334) 223-7280                                 (334) 834-0353 Fax

**Sentencing Date:**       September 7, 2006

**Offense:**     **Count 1:**    Felon in Possession of a Firearm,
                                 [18 U.S.C. §§ 922(g)(1) and 924(e)]-
                                 Maximum Penalties: NLT 15 Years/Life,
                                 $250,000 fine, class A felony

**Release Status:**        On January 24, 2006, U.S. Marshal arrested and brought over on writ
                           from Lee County Detention Center, Opelika, AL.

**Detainers:**             None

**Codefendants:**          None

**Related Case:**          None

**Date Report Prepared**:              **Date Report Revised**:
July 31, 2006                          August 24, 2006

Patrick Lemuel Bass
Docket No. 3:05cr112-WHA

## Identifying Data:



| | |
|---|---|
| Date of Birth: | July 24, 1966 |
| Age: | 39 |
| Race: | White |
| Sex: | Male |
| | |
| S.S.N. #: | 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 |
| FBI #: | 596345DA2 |
| USM #: | 11872-002 |
| AIS#: | 218977 |
| Louisiana DOC#: | 294819 |
| SID I.D. #: | AL-01325109 |
| | FL-02081095 |
| | GA-2303092A |

| | |
|---|---|
| Education: | 7th grade |
| Dependents: | Two (2) |
| Citizenship: | U.S.A. |
| | |
| Legal Address: | 84 Lawson Drive |
| | Pine Mountain, GA 31822 |
| | |
| Present Address: | c/o Montgomery City Jail |
| | P.O. Drawer 159 |
| | Montgomery, AL 36101 |
| | |
| Aliases: | Datrick Lemuel Bass |
| | Lem Bass |
| | Len Bass |
| | Patrick Lem |
| | Patrick L. Bass |
| | Patrick Lemeul |
| | Patrick Lamuel Bass |
| | Lemuel Patrick Bass |
| | Lemuel P. Bass |
| | Lemuel Bass |

**Restrictions on Use and Redisclosure of Presentence Investigation Report.** Disclosure of this presentence investigation report to the Federal Bureau of Prisons and redisclosure by the Bureau of Prisons is authorized by the United States District Court solely to assist administering the offender's prison sentence (*i.e.,* classification, designation, programming, sentence calculation, pre-release planning, escape apprehension, prison disturbance response, sentence commutation, or pardon) and other limited purposes, including deportation proceedings and federal investigations directly related to terrorist activities. If this presentence investigation report is redisclosed by the Federal Bureau of Prisons upon completion of its sentence administration function, the report must be returned to the Federal Bureau of Prisons or destroyed. It is the policy of the federal judiciary and the Department of Justice that further redisclosure of the presentence investigation report is prohibited without the consent of the sentencing judge.

## PART A.  THE OFFENSE

### Charge(s) and Conviction(s)

1.  Patrick Lemuel Bass was named in a two-count indictment filed by a Middle District of Alabama Grand Jury on April 20, 2005.

2.  Count 1 of the indictment charges that on or about February 7, 2004, in Lee County, Alabama, Patrick Lemeul Bass, having been convicted on March 26, 1990, for Dealing in Stolen Property, Circuit Court of the Third Judicial Circuit, Case No. 90-101-CF; and on September 10, 2001, for Distribution of Controlled Substance, Possession/Receipt of Controlled Substances, and Possession of Marijuana, 1st Degree, Case Nos. CC-01-446, 447, 448, crimes punishable by imprisonment for a term exceeding one year under the laws of the States of Florida and Alabama, Bass did possess a firearm, to wit: a Jennings Firearms, Bryco 38, .380 pistol, serial number 501139, in violation of 18 U.S.C. § 922(g)(1).

3.  Count 2 charged the defendant with possession of methamphetamine on or about February 7, 2004, in violation of 21 U.S.C.  § 844(a).

4.  On January 5, 2006, a Writ of Habeas Corpus Ad Prosequendum was issued to the U.S. Marshal's office ordering the Lee County Detention Center, Opelika, AL, to release custody of the defendant to appear and answer charges pending in the Middle District of Alabama.

5.  On January 24, 2006, the defendant was arrested and brought over to federal custody.

6.  On February 8, 2006, Mr. Bass appeared before U. S. Magistrate Susan Russ Walker for an initial appearance and entered a plea of not guilty. He was detained pending further court hearings.

7.  On June 13, 2006, Mr. Bass appeared before U.S. Magistrate Judge Susan Russ Walker and entered a plea of guilty to the indictment pursuant to a Rule 11(c)(1)(A) and 11(c)(1)(C) plea agreement. In exchange for his guilty plea, the government agreed to recommend a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. §3E1.1(a); move for an additional one level reduction under U.S.S.G. §3E1.1(b)(2) at sentencing if Bass qualifies; recommend a sentence of 180 months in the event he is sentenced as an Armed Career Criminal under 18 U.S.C. § 924(e); or in the event he is sentenced pursuant to 18 U.S.C. § 924(a)(2) and subjected to the statutory maximum of 10 years imprisonment, agree that his sentence be within the applicable guideline range and run concurrently to the sentence imposed with respect to any pending charges in Lee County, Alabama, Troop County, Georgia, or Meriweather County, Georgia; agree that his sentence on those charges shall not exceed 180 months, and agreed to dismiss Count 2 at sentencing. Both parties agree to reserve all arguments with respect to the calculation of the offense level and the defendant's criminal history and not move for an upward or downward departure from the applicable guideline range or for a variance from the range pursuant to Booker. Mr. Bass agreed to plea guilty to Count 1, forfeit all firearms in his possession, and waived his right to appeal the sentence and conviction.

## The Offense Conduct

8.   On February 7, 2004, approximately 9:40 p.m., an Alabama State Trooper executed a traffic stop after he observed a white Honda Accord occupied by two people run off the road. The trooper approached and noticed that both the driver and passenger appeared nervous. The trooper asked the passenger, Patrick Lemuel Bass, to produce identification but Bass claimed the driver, Susan Dixon, had his license inside her purse. Dixon seemed surprised but frantically searched through her purse with negative results. While the trooper awaited proof of identity, Bass turned his back and placed his hands between the seats, where the trooper could not see them. Bass was instructed to turn around and exit, at which time, he shoved the door open and fled on foot. Bass was apprehended shortly thereafter attempting to jump a fence. The trooper had to administer OC spray several times because Bass failed to obey his commands, resisted arrest and struck the trooper in the face with his right fist. The defendant was handcuffed after help arrived. A search of his person revealed a set of digital scales, $795.00 dollars, three pocket knives, a black zip lock bag with a gas pipe, and a clear plastic bag containing methamphetamine from Bass' person. The trooper also discovered a Jennings Firearms, Bryco 38, .380 pistol, serial number 501139 and a cellular phone on the ground where Bass laid. Bass was arrested and transported to the Lee County Jail, where it was discovered he had four outstanding warrants. Forensic analysis of the seized drugs revealed the presence of **5.72 grams** of methamphetamine

## Victim Impact

9.   There are no identifiable victims of the offense.

## Adjustment for Obstruction of Justice

10.   The probation officer has no information suggesting that the defendant impeded or obstructed justice.

## Adjustment for Acceptance of Responsibility

11.   The defendant entered a plea of guilty to the indictment. He freely admitted his guilt in court at the time of his plea and appeared to fully accept responsibility for his conduct.

## Offense Level Computations

12.   The 2005 edition of the Guidelines Manual, effective March 27, 2006, has been used in this case.

13.   **Base Offense Level:** The base offense level for a violation of 18 U.S.C. § 922(g)(1) is found at U.S.S.G. §2K2.1. Pursuant to U.S.S.G. §2K2.1(a)(4)(A), the base offense level is 20, if the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense. Mr. Bass had one previous felony conviction, Unlawful Distribution of Controlled Substances, Case No. CC-01-446.

**+20**

4

14.    **Specific Offense Characteristics:** Pursuant to U.S.S.G. §2K2.1(b)(5), if the defendant used or possessed **any** firearm or ammunition in connection with another felony offense; increase by 4 levels. Mr. Bass unlawfully possessed a Jennings Firearms, Bryco 38, .380 pistol, while in possession of 5.72 grams of methamphetamine (a felony). A four (4) level increase is warranted.

**+4**

15.    **Adjustment for Role in the Offense:** None

0

16.    **Victim-Related Adjustments:** None

0

17.    **Adjustment for Obstruction of Justice:** None

0

18.    **Adjusted Offense Level** (Subtotal):

**24**

19.    **Adjustment for Acceptance of Responsibility:** The defendant has clearly demonstrated a recognition of personal responsibility for his criminal conduct and also timely provided information to the government concerning the offense or timely notified authorities of his intentions to enter a plea of guilty; therefore, the offense level is reduced three levels pursuant to §3E1.1(a) and (b).

**-3**

20.    **Total Offense Level:**

**21**

21.    **Chapter Four Enhancements:** The defendant is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) because the instant offense is a violation of 18 U.S.C. § 922(g) and he has at least three prior convictions for a "violent felony" or "serious drug offense" (**Simple Burglary, Burglary of a Structure, and Unlawful Distribution of a Controlled Substance** committed on occasions different from one another. U.S.S.G. §§4B1.4(a) and (b)(3)(B)). If the offense level determined under this section is greater than the offense level otherwise applicable, the offense level determined under this section shall be applied. The offense level determined pursuant to U.S.S.G. §2K2.1(a)(4) and (b)(5) totals 24; therefore, an offense level of 33 determined under §4B1.4(b)(3)(B) is greater than the offense level otherwise applicable.

**33**

22.    **Adjustment for Acceptance of Responsibility:** Pursuant to U.S.S.G. §§3E1.1(a) and (b), if the defendant has clearly demonstrated acceptance of responsibility for the offense, decrease by 2 levels. Mr. Bass fully admitted the conduct as charged in the indictment and is eligible for a two level decrease in his offense level. Upon motion by the government stating that he assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, he is eligible for decease of an additional 1 level. The probation officer anticipates government counsel filing said motion authorizing the additional one level decrease.

**-3**

23.    **Total Offense Level:**

**30**

## PART B.  DEFENDANT'S CRIMINAL HISTORY

### Juvenile Adjudication(s)

24.   None.

### Adult Criminal Conviction(s)

| | Date of Arrest | Conviction/Court | Date Sentence Imposed/Disposition | Guideline | Pts |
|---|---|---|---|---|---|
| 25. | 11/11/85 (Age 19) | Grand Theft, 3rd Degree Felony-Circuit Court, Wakulla County, Florida, Case No. 85-CF-165 | **05/02/86:** Guilty. Sentenced to 60 days confinement, 18 months probation, and ordered to pay $494.19 restitution. | §4A1.2(e) | **0** |

The defendant was represented by an attorney. Court records reflect that on November 11, 1985, Bass entered into a structure belonging to Jon D. Vecchie, located at Howard Street, St. Marks, and stole a 1985 Evinrude 235 outboard motor, serial number #J0583353, valued at $100 or more.  It should be noted that Bass was also charged with Burglary of a Structure, which was dismissed.

| | Date of Arrest | Conviction/Court | Date Sentence Imposed/Disposition | Guideline | Pts |
|---|---|---|---|---|---|
| 26. | 07/28/89 (Age 23) | 1: Simple Burglary, 2: Felony Theft/ 38th Judicial District, Cameron Parish, LA Case Nos. 60111 and 60112 | **03/22/90:** Failed to appear for trial. Bench warrant issued. **01/15/91:** Arrested on bench warrant. **02/21/91: 1 and 2:** Sentenced to 4 years with the Department of Corrections-DOC. **04/30/92:** Paroled. **12/15/94:** Released from parole. | §4A1.1(a) | **3** |

The defendant was represented by Ronald Ware.  Records reflect that on July 28, 1989, at approximately 5:00 p.m., a Cameron Sheriff Deputy was dispatched to a burglary and theft and criminal property damage complaint at Larry's Seafood, Grand Chenier, LA. The deputy completed his investigation and left the scene to interview an employee at his/her residence. While at the residence, the deputy received a call to return to Larry's Seafood.  Upon arrival, witnesses identified two suspects, Patrick Bass a/k/a Lemuel Bass and Samuel Flores, who stood nearby, at which time, they were arrested and transported to the Cameron Parish Jail. It should be noted that Bass was also charged with Simple Criminal Damage to Property, which was dismissed.

Patrick Lemuel Bass
Docket No. 3:05cr112-WHA

| 27. | 02/19/90 (Age 23) | Dealing in Stolen Property/Third Judicial Circuit Court, Taylor County, FL, Case No. 90-101-CF | **03/26/90:** Nolo Contendere. Sentenced to 24 months in prison to run concurrently with 90-147-CF. Received 32 days jail credit. **10/05/90:** Released. | §4A1.1(a) |   |
|  |  |  |  |  | **3** |

The defendant was represented by Corad Bishop. Court records reflect that on November 15, 1989, Bass unlawfully trafficked or endeavored to traffic a Depth Finder, property belonging to Dennis Reynolds, with intent to sell, transfer, dispense, distribute, or otherwise dispose of said stolen property knowing that it was stolen.

| 28. | 03/12/90 (Age 23) | **1:** Burglary of Structure/Third Judicial Circuit Court, Taylor County, FL, Case No. 90-147-CF | **03/26/90:** Nolo Contendere. Sentenced to 24 months in prison to run concurrently with 90-101-CF. Received 14 days jail credit. **10/05/90:** Released. | §4A1.1(a) |   |
|  |  |  |  |  | **3** |

The defendant was represented by Corad C. Bishop, Jr. Court records reflect that on March 12, 1990, at approximately 8:30 p.m., Bass was arrested after Taylor County Sheriff deputies observed him cut through the Taylor County Jail back gate and attempt to cut the lock off a drug storage Incinerator. The deputies chased Bass and apprehended him after he was observed hiding under a van. Bass was also charged with Grand Theft III; but, the charge was dismissed on March 27, 1990.

| 29. | 05/29/94 (Age 27) | **1:** Driving Under the Influence of Alcohol (D.U.I) **2:** Driving While License Suspended/District Court, Lee County, AL, Case Nos. TR94-1998 and 2000 | **07/26/94:** Convicted. **1:** Sentenced to 365 days in jail, suspended. Sentenced to 2 years probation and ordered to pay fine and costs. **2:** Fined $10 plus $93 costs. | §4A1.1(c) |   |
|  |  |  |  |  | **1** |

The defendant waived attorney representation. Records reflect that on May 29, 1994, at 6:58 p.m., Bass, who drove a red 1985 Ponitac Sunbird, was stopped by an Alabama State Trooper on Lee Road 379 at U.S. Highway 280 and charged with D.U.I., DWLS and Running A Stop Sign.

| 30. | 04/09/96 (Age 29) | DWLS-Felony/Third Judicial Circuit Court, Taylor County, FL, Case No. 96-120-CF | **12/05/96:** Nolo Contendere. 2 years probation and pay $1000 fine plus costs. **01/15/98:** Probation violation. Sentenced to 36 months in prison to run consecutive to 96-152-CF and concurrently with 96-139-CF. **07/03/00:** Released. | §4A1.1(a) §4A1.2(c)(1)(A) | **3** |

The defendant was represented by an attorney. Court records reflect that on April 9, 1996, at approximately 3:30 a.m., a Perry Police officer executed a traffic stop after he observed Bass drive away from an area where gun shots were fired. The officer asked for Bass' drivers license, ran a license check and arrested him after the results returned suspended. It should be noted that Bass granted the officer permission to search and no firearm was discovered.

| 31. | 06/01/96 (Age 29) | DWLS-Felony/Third Judicial Circuit Court, Taylor County, FL, Case No. 96-139-CF | **01/15/98:** Nolo Contendere. Sentenced to 36 months in prison to run consecutive to 96-152-CF and concurrently with 96-120-CF. Received 32 days jail credit. **07/03/00:** Released. | §4A1.1(a) §4A1.2(c)(1)(A) | **3** |

The defendant was represented by B. Hargrove. Court records reflect that on June 1, 1996, at approximately 3:05 a.m., Bass was arrested after a Perry Police officer observed him driving a Chevy pick up truck, pull into Waco 5 service station and jump out. The officer knew Bass' drivers license was suspended from a previous encounter. When the officer approached, Bass told the officer that he was not the driver but the female passenger with him was. The passenger admitted that Bass was the driver and he was arrested. It should be noted that police records reflect that this was the defendant's fifth violation for DWLS in Taylor County, FL.

| 32. | 06/14/96 (Age 29) | Leaving Scene of Accident/Third Judicial Circuit Court, Taylor County, FL, Case No. 96-152-CF | **12/05/96:** Nolo-contendere. 2 years probation, 180 days in jail to run concurrently with 96-139-CF and 96-120-CF. Received 5 days jail credit. **01/15/98:** Probation Violation. Time served. Credited 133 days. | §4A1.1(b) §4A1.2(c)(1)(A) | **2** |

The defendant was represented by Corad Bishop. Records reflect that on June 14, 1996, a Perry Police officer was dispatched to a hit and run accident on Jefferson and Madison Street, Perry, FL. Upon arrival, witnesses identified Lemeul Bass as the driver and provided a description of his truck and tag number. Officers arrested Bass at another location at which time the officer confirmed the truck driven by Bass matched the description and had damage to the front. Bass admitted that he was involved in the accident, drove the truck, failed to stop and report the accident to law enforcement and check on the injured persons. The injured person, Sue Smith, suffered spinal injuries as a result of the accident. It should be noted that police records reflect that Bass was also charged with DWLS.

| | | | | | |
|---|---|---|---|---|---|
| 33. | 08/02/97 (Age 31) | Driving While License Revoked/District Court, Lee County, AL, Case No. TR-97-4568 | **01/14/99:** Convicted. Fined and pay $71 costs. | §4A1.2(c)(1) | **0** |

No records were available that indicate attorney representation or waived counsel. No further details available.

| | | | | | |
|---|---|---|---|---|---|
| 34. | 08/11/97 (Age 31) | **1:** DWLR, **2:** D.U.I./District Court, Lee County, AL, Case Nos. TR-97-4782 and 4784 | **01/14/99:** Convicted. **1:** Fined and pay $71 costs. **2:** Fined $600 plus $126 costs. | §4A1.1(c) | **1** |

The defendant was represented by Michael J. Bellamy. No further details available.

| | | | | | |
|---|---|---|---|---|---|
| 35. | 09/16/97 (Age 31) | D.U.I./Municipal Court, Phenix City, AL, Case No. TR-97-3767 | **09/25/97:** Convicted. 30 days, suspended, fined $708, $71 costs, and 30 day suspension of drivers license. | §4A1.2, comment. (backg'd) Also see Alabama v. Shelton | **0** |

No records were available that indicate attorney representation or waived counsel. No further details available.

| | | | | |
|---|---|---|---|---|
| 36. | 02/18/01 (Age 34) | **1:** Distribution of Controlled Substances, **2:** Possession of Methamphetamine, **3:** Possession of Marijuana, 1st Degree/Circuit Court, Russell County, AL, Case Nos. CC-01-446, 447, and 448 | **09/10/01:** Pled guilty. **1:** Sentenced to 10 years in prison, including 5 years enhancement to run concurrently with CC-01-447 and 448, 6 months suspension of drivers license, pay $2,366.36 costs and fees and credited 204 days. **2 and 3:** Sentenced to 5 years to run concurrently with each other, 6 months suspension of drivers license, and pay court costs and fees. Credit for time served. **06/13/03:** Paroled. **07/03/04:** End of sentence. | §4A1.1(a) |
| | | | | **3** |

The defendant was represented by Walter L. Gray, III. Records reflect that the defendant did knowingly possess, sell, deliver, furnish, manufacture and distribute 28 grams or more of methamphetamine. Mr. Bass was also charged with possession of marijuana for other than his personal use.

| | | | | |
|---|---|---|---|---|
| 37. | 09/10/04 (Age 38) | DWLS/District Court, Lee County, AL, Case No. TR-04-5281 | **06/09/05:** Convicted. Fined and pay $106 costs. | §4A1.2(c)(1) |
| | | | | **0** |

No records were available that indicate attorney representation or waived counsel. No further details available.

### Criminal History Computation

38.   The above-noted criminal convictions result in 22 criminal history points. Pursuant to U.S.S.G. §4A1.1(d), 2 points are added because he committed part of the instant offense (i.e., any relevant conduct) while under parole (**End of Sentence: July 3, 2004**). An additional point is added under §4A1.1(e), because Bass committed part of the instant offense (i.e., any relevant conduct) less than two years following his release from imprisonment on June 13, 2003, Case Nos. CC-01-446,447 and 448. Mr. Bass has a total of 25 criminal history points. According to the sentencing table in Chapter 5, Part A, 13 or more criminal history points establishes a criminal history category of VI. Mr. Bass is classified as an **Armed Career Criminal** therefore, the minimum criminal history category shall be IV or whichever is greatest from Chapter Four, Part A (Criminal History). U.S.S.G. § 4B1.4(c)(1). A category VI is used for guideline purposes.

### Pending Charges

| Date of Arrest | Charge | Location | Disposition |
|---|---|---|---|
| 39. 02/07/04 (Age 37) | **1:** Assault, 2nd Degree, **2:** Possession of a Controlled Substances, **3:** Use/Possession of Drug Paraphernalia **4:** Resisting Arrest, **5:** Pistol-Carrying Without License/Permit, Firearm-Altered Identification | Circuit Court, Lee County, AL, Case Nos. CC-05-808, 808.01, 808.02, 808.03, and 808.04 | Pending. |

The defendant is represented by Margaret Young Brown. Cases are related to instant offense.

| Date of Arrest | Charge | Location | Disposition |
|---|---|---|---|
| 40. 03/23/05 (Age 38) | **1:** Unlawful Manufacture of a Controlled Substance First Degree, **2:** Trafficking Methamphetamine, **3:** Unlawful Possession of Drug Paraphernalia, **4:** Attempting to Elude Police Officer | Sheriff's Office, Lee County, A L | Pending. |

On September 14, 2004, at approximately 9:50 p.m., Lee County Sheriff's deputies observed three subjects riding with no seatbelts in a white Mercury Cougar at the Coastal Gas Station, Smiths, AL. Deputies identified Patrick Bass as the driver because of previous encounters with law enforcement. The deputies set up surveillance and followed the vehicle as it traveled east on Highway 280. The deputies activated their emergency lights after discovering that the defendant's license was suspended. Bass failed to stop and sped away at high rate of speed exceeding 70 mph. Deputies chased the vehicle until the defendant loss control of his vehicle and struck an embankment near Lee Road 249, Smiths, Alabama. The defendant and rear passenger, Shawn Layne, fled on foot and escaped. The front passenger, Bobby Randall McClendon, remained in the vehicle and was arrested. An inventory search of the vehicle revealed items commonly used in the clandestine manufacture of methamphetamine (i.e., acetone, hot plate, iodine crystals, acid, glassware, 216 pseudoephedrine pills, plastic ware, wooden utensils, bi-layered liquid, and other items. A subsequent search of the front passenger compartment revealed a black plastic bag containing two vials of methamphetamine. Bobby McClendon denied any knowledge of the methamphetamine laboratory.

| 41. | 03/23/05 (Age 38) | 1: Possession Of Marijuana, 2: Cruelty To Children, 3: Criminal Attempt, 4: Possession-Firearm/Knife During Crime, 5: Theft By Receiving Stolen Property, 6: Obstruction of Officers 7: Possession of Firearm By Convicted Felon | Sheriff's Office, Meriwether County, GA, | Pending. |

On March 22, 2005, at approximately 6:05 p.m., West Georgia Drug Task Force agents assisted by the Metro Fugitive Squad set up surveillance outside 84 Lawson Drive, Pine Mountain, GA, to execute an arrest warrant on Bass. The agents observed Bass exit the trailer and verbally commanded him to surrender; however, the defendant ran back into the residence, jumped through a glass window in the rear and fled on foot into the woods. Bass was apprehended after a violent struggle. Agents arrested Jeffery Paul McDaniels outside the trailer and seized a quantity of methamphetamine from his person. Agents also arrested Sarai Christine Watters, Pamela Laird, and Shawn Michael Layne, who was present at the time of the execution of the warrant. While securing the residence, agents observed items used in the manufacturing of methamphetamine and obtained a search warrant. Items seized from the residence and a shed located on the property were: a Smith & Wesson Airweight .38 Special, a Winchester Model 670-270 rifle, assorted ammunition, anhydrous ammonia, clear bags containing pseudoephedrine pills, three books on the manufacturing of methamphetamine,

a green notebook with instructions on how to manufacture methamphetamine, a digital scale, numerous clear plastic bags, a glass pipe containing suspected methamphetamine, and bags containing marijuana and methamphetamine. Agents interview Jeffrey McDaniels who advised that Bass manufactured methamphetamine, always carried a .38 caliber pistol in his back pocket, and smoked methamphetamine with others around his three year old child. McDaniels also admitted that he smoked methamphetamine around the child, assisted Bass move a big tank into the shed and cleaned up two burn piles from previous cooks for Bass.

On May 27, 2005, at approximately 11:45 p.m., the defendant attacked a Meriwether County jailer with a metal shank instrument approximately eight to ten inches in length after the jailer opened his cell block to hand him his laundry. Bass pushed the jailer to ground, stolen his annex keys and escape from the Meriwether County Detention Center. The jailer sustained minor abrasions as a result of the incident.

On May 30, 2005, at approximately 7:44 a.m., Lee and Russell County Sheriff's Offices assisted by the U.S. Marshal's, executed a search warrant at 1502 Fletcher Road, Phenix City, AL, to locate Bass. Law enforcement officers searched the residence and discovered Bass hiding in a wall space of the residence. Bass physically resisted by fighting and was subdued after officers used Feeze + P spray.

### Other Arrest(s)

| | Date of Arrest | Charge | Location | Disposition |
|---|---|---|---|---|
| 42. | 11/11/85 (Age 19) | Burglary of a Structure | Circuit Court, Wakulla County, Florida, Case No. 85-CF-165 | **05/02/86:** Dismissed. |
| 43. | 07/28/89 (Age 23) | Simple Criminal Damage to Property | 38th Judicial District, Cameron Parish, LA Case Nos. 60113 | **03/23/90:** Dismissed. |
| 44. | 03/12/90 (Age 23) | Grand Theft III | 3rd Judicial Circuit Court, Taylor County, FL, Case No. 90-147-CF | **03/27/90:** Nol-prossed. |
| 45. | 03/01/96 (Age 29) | Harassment | District Court, Lee County, AL | **03/04/96:** Nol-prossed. |

## PART C.  OFFENDER CHARACTERISTICS

### Personal and Family Data

46.    The defendant reported that he was born on July 24, 1966, in New Orleans, LA., to Claude

Bass (deceased) and Minnie Freeman-Heartsfield (deceased). The defendant related that his father died from heart failure in 1979. Bass related that he has one half-sister, Mary Sims (age 40), who is disabled and resides in Perry, FL.

47.     Prior to his arrest, Bass reported that he resided at 84 Lawson Drive, Pine Mountain, GA.

## Marital History

48.     Mr. Bass reported that in 1992, he married Kelly Bass in Columbus, GA. He advised that the couple separated in 1993 and eventually divorce in 1996. He reported that one child was born to this union. Jacob Cade Bass, age 8, resides with his mother, Kelly Bass, in Columbus, GA. Bass advised the Kelly Bass has since remarried and is employed as a stylist at Ranger Joes on Victory Drive, Columbus, GA. No records exist with the Department of Human Resources indicating child support obligations with Kelly Bass. Bass advised that he has a daughter, Ashton Bass, age 4, with Pamela Laird. The defendant advised that Ms. Laird is incarcerated with the Department of Corrections on drug charges. He reported that Ashton Bass resides with her foster parents, Jim and Debbie Mae, in Opelika, AL. Bass stated that he writes and calls his daughter on occasions.

## Physical Condition

49.     The defendant is 5 feet 8 inch tall and weighs approximately 190 pounds. His hair color is brown and he has brown eyes. He reported a tattoo of a "frog" on his right calf. He reported he had surgical scars on his left leg and knee when he suffered from a vehicle accident in which his leg was crushed between two cars while he stood in a parking lot. Bass described his health as good.

## Mental and Emotional Health

50.     The defendant reported no history of mental and emotional treatment.

## Substance Abuse

51.     The defendant admitted prior use of marijuana, powder cocaine, "crack" cocaine, and methamphetamine. He reported that he began using methamphetamine approximately 2 to 3 years ago. He advised that he has smoked "crack" for approximately 10 years. Bass reported that he drank alcohol. A review of the defendant's criminal history indicates a prior history of alcohol related arrests. Mr. Bass was convicted twice for D.U.I. in 1997. The defendant would be a good candidate for alcohol and substance abuse treatment while incarcerated.

## Education and Vocational Skills

52.     The defendant advised that he dropped out in 1981 during his 8th grade school year while attending Taylor County Junior High, Perry, FL. He stated that his reason for dropping out was to work and earned money. Mr. Bass reported having specialized training in welding. He has had no further formal education or vocational training.

## Employment Record

53.  According to the defendant, he worked approximately 10 years with Atlanta Iron Workers Union, Local 387. He also advised of crab and commercial fishing in Perry, FL, from 1982 to 1993 before relocating to Alabama.

## Financial Condition:  Ability to Pay

54.  The defendant has no income or other assets to be used toward payment of a lump sum fine. Based upon the above noted information, it appears the defendant does not have the ability to pay a fine. In addition, the defendant has been detained in federal custody since January 24, 2006.  Mr. Bass's financial status noted above does not differ significantly from his financial condition reported at the time of his arrest.

# PART D.  SENTENCING OPTIONS

*Pursuant to the ruling in United States v. Booker, 125 S.Ct. 738 (2005), the United States Sentencing Guidelines are only advisory and are not binding on the court.*

## Custody

55.  **Statutory Provisions:** The authorized term of imprisonment for a class A felony, is not less than 15 years nor more than life.  18 U.S.C. § 924(e)(1).

56.  **Guideline Provisions:**  Based on a total offense level of 30 and a criminal history category of VI, the guideline range of imprisonment is 168 to 210 months (Zone D).  However, pursuant to U.S.S.G. §5G1.1(c), the guideline range is limited to the statutorily authorized minimum sentence. Therefore, the guideline imprisonment range shall be 180 to 210 months.

## Impact of Plea Agreement

57.  Mr. Bass pled guilty pursuant to a Rule 11(c)(1)(A) and 11(c)(1)(C) plea. As part his plea, the government recommends that in the event he is classified and sentenced as an Armed Career Criminal under 18 U.S.C. § 924(e), it will recommend a sentence of 180 months or in the event he is sentenced pursuant to 18 U.S.C. § 924(a)(2) and subjected to the statutory maximum of 10 years, the government will agree that his sentence be within the applicable guideline range and run concurrently with respect to any pending charges in Lee County, AL; Troop County, GA; or Meriweather County, GA; and agree that his sentence on those charges shall not exceed 180 months. If the Court determines that Bass qualifies as a Armed Career Criminal, a mandatory minimum sentence of 15 years would apply. In addition, the  statutory maximum penalty would be no less than 15 years to life.

## Supervised Release

58.  **Statutory Provisions:** The authorized term of supervised release is not more than five years. 18 U.S.C. § 3583(b)(1).

59.  **Guideline Provisions:**  The authorized term of supervised release is at least three but not more than five years pursuant to §5D1.2(a)(1).

60.    In addition to the standard conditions of supervision, the defendant is also subject to special conditions of supervision as provided in U.S.S.G. §§5D1.3(d) and (e).

### Probation

61.    **Statutory Provisions:**  The defendant is not eligible for probation, pursuant to 18 U.S.C. §§ 3561(a)(1) and (3).

62.    **Guideline Provisions:** Pursuant to U.S.S.G. §5C1.1(f), if the applicable guideline range is in Zone D of the Sentencing Table, the minimum term shall be satisfied by a sentence of imprisonment.

### Fines

63.    **Statutory Provisions:** The maximum fine is $250,000, pursuant to 18 U.S.C. § 3571.

64.    A special assessment of $100.00 is mandatory, pursuant to 18 U.S.C. § 3013.

65.    **Guideline Provisions:** The fine range for the instant offense is from $15,000 to $150,000.00 pursuant to §5E1.2(c)(3).

66.    In determining the amount of the fine, the Court shall consider, among other factors, the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed. U.S.S.G. §5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts, dated April 15, 2005, suggests that a monthly cost of $1,933.80 be used for imprisonment, a monthly cost of $1,675.23 be used for halfway houses, and an annual cost of $3,452.72 be used for supervision.

### Restitution

67.    Restitution is not an issue in this case.

## PART E.   FACTORS THAT MAY WARRANT DEPARTURE

68.    The probation officer has not identified any factors concerning the offense or the offender which would warrant a departure from the prescribed guideline range.

Respectfully submitted,

Leslie Prim Hopek
Chief U.S. Probation Officer

by     /s/ Terrence N. Marshall         TNM by RDS
Terrence N. Marshall
U. S. Probation Officer

Patrick Lemuel Bass
Docket No. 3:05cr112-WHA

Approved:

**/s/ R. Dwayne Spurlock**
R. Dwayne Spurlock
Deputy Chief U.S. Probation Officer

/TNM

August 24, 2006

## ADDENDUM TO THE PRESENCE REPORT

## UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA
## UNITED STATES V. PATRICK LEMUEL BASS, DOCKET NO. 3:05cr112-WHA

1.   The presentence report in this case was disclosed on <u>July 31, 2006</u>. A written response containing objections was due in this office on <u>August 18, 2006</u>.

2.   No communication was received from the Government Counsel.

3.   Communication was received from Defense Counsel on <u>August 23, 2006</u>, and contained objections to the initial presentence report.

4.   An objection conference was held with counsels on <u>August 23, 2006</u>. Issues listed below could not be resolved.

### OBJECTIONS

### By the Government

5.   The Government has no objections to the presentence report.

### By the Defendant

### Objection No. One

6.   <u>Paragraph Nos. 26 and 29</u>: The defendant objects to points being assessed to these convictions because he does not recall being represented by counsel in these matters.

7.   <u>Probation Officers Response</u>: Defense counsel was provided documentation which confirms Mr. Bass was represented by counsel in these matters.

### Objection No. Two

8.   <u>Paragraphs Nos. 27 and 28</u>:  The defendant objects to criminal history points being assessed because the convictions occurred more than fifteen years ago.

9.   <u>Probation Officer Response</u>: The probation officer maintains that the release date from the incarceration on these convictions was 14 years and 4 months before the events which led to the present conviction. Pursuant to U.S.S.G. §4A1.2(e), any prior sentence of imprisonment exceeding one year and one month imposed within fifteen years of the defendant's commencement of the instant offense is counted.  Both convictions fall within the fifteen year window and are counted appropriately under §4A1.1(a).

Patrick Lemuel Bass
Docket No. 3:05cr112-WHA

## Objection No. Three

Addendum

10.  <u>Paragraphs No. 21, 26, and 28</u>:  The defendant objects to the conclusion that he qualifies as an Armed Career Criminal. He states that the burglary convictions did not involve residences, occurred more than 15 years ago, and do not meet the definition of "generic burglary." Mr. Bass notes that he understands the ACCA statute, 18 U.S.C. § 924(e), does not give a time limit for qualifying prior convictions and has a more expansive definition of "violent offense" than the guideline definition of "violent offense" for "career criminals." See U.S.S.G. §4B1.4, Application Note 1 and 18 U.S.C. § 924(e)(2)(b)(ii).

11.  <u>Probation Officers Response</u>:  The probation officer maintains that Simple Burglary and Burglary of Structure are violent felonies as defined under 18 U.S.C. § 924(e)(2)(B)(ii). *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143 (1990) states that "burglary," within meaning of sentence enhancement statute, refers to conviction of any crime, regardless of its exact definition or label, having basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.

Respectfully submitted,

Leslie Prim Hopek
Chief U.S. Probation Officer

by      /s/ Terrence N. Marshall
Terrence N. Marshall
U. S. Probation Officer

Approved:

/s/ R. Dwayne Spurlock
R. Dwayne Spurlock
Deputy Chief U.S. Probation Officer

Date: August 24, 2006

/TNM

# FEDERAL DEFENDERS

## MIDDLE DISTRICT OF ALABAMA
### FEDERAL DEFENDER PROGRAM, INC.
### 201 MONROE STREET, SUITE 1960
### MONTGOMERY, AL 36104
TELEPHONE (334) 834-2099
FACSIMILE (334) 834-0353
Website: www.almfd.org

CHRISTINE A. FREEMAN
Executive Director

**PRIVILEGED AND CONFIDENTIAL**                      October 12, 2006

Patrick Bass
Federal Inmate
Montgomery City Jail
P. O. Drawer 159
Montgomery, AL 36195

Dear Mr. Bass:

You will soon receive a copy of the final Judgment filed after the sentencing hearing in your case. The sentence imposed was a sentence of 96 months in prison and 3 years on supervised release. As stated in court today, this sentence is to be concurrent with any sentence received on the pending charges in Lee County and Merriweather County.

It is my assumption that you do **not** wish to appeal this sentence or conviction. In my opinion, an appeal would NOT be successful, since you pled guilty to the offense and the sentence imposed was within the permitted range of the U.S. Sentencing Guidelines, and you specifically waived the right of appeal in your plea agreement. However, if you want to appeal this sentence, you must contact me immediately. A notice of appeal must be filed within 10 days from the date the Judgment was entered.

As I have told you in the past, this office represents you as long as this case and/or your sentence obligations exist. Please feel free to contact us with any questions or problems that develop.

I wish you the very best of luck. Please note that copies of the *Blakely* and *Booker* Supreme Court opinions are enclosed with this letter.

Sincerely,

Christine A. Freeman

caf/
enclosures



IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Civil Action No. 3:07-cv-887-WHA |
| V. | ) | (3:05-CR-00112) |
| | ) | |
| PATRICK BASS | ) | |

### AFFIDAVIT

| | |
|---|---|
| STATE OF ALABAMA | ) |
| COUNTY OF MONTGOMERY | ) |

I, **CHRISTINE A. FREEMAN,** being duly sworn, states as follows:

1.    I am employed by the office of the Federal Defender for the Middle District of Alabama.

2.    I was assigned as trial counsel for Patrick Bass, in Case No. 3:05-CR-00112.

3.    In Mr. Bass' Motion, filed on October 3, 2007, Mr. Bass alleges that his counsel was ineffective because there was no objection to a four-level sentencing enhancement for possessing a firearm "in connection with another felony offense," on the basis of his possession of a controlled substance.  (Motion, p. 3, Ground One.)

4.    It is correct that the possession of the controlled substance was the basis for the misdemeanor drug possession in violation of 18 U.S.C. §844, charged in Count 2 in this indictment; Count 2 was dismissed as a result of the plea agreement in this case.

5.    It is correct that no objection was lodged to this sentencing enhancement imposed in calculating the sentence for the conviction on Count 1..

1



6.      The U.S. Court of Appeals for the Eleventh Circuit has upheld application of this sentencing enhancement under apparently similar circumstances, i.e., in possession with a personal use quantity of drugs. See *U.S. v. Wooten*, 2007 WL 330736 (November 8, 2007).

7.      It also appears that the Sentencing Guidelines intended the enhancement of a firearm sentence on the basis of a controlled substance violation to be restricted to "drug trafficking" offenses, and not mere possession of controlled substances. *See* United States Sentencing Guidelines (2006 ed.), § 2K2.1, Application Note 14 (B) ["Application When Other Offense is Burglary or Drug Offense" - noting that this enhancement applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia."]

8.      If Mr. Bass had pled guilty to both Count 1 and Count 2, it appears the conduct underlying Count 2 would not have been considered as a basis for a sentencing enhancement for the firearm offense in Count 1.  Rather, the guideline sentence for each count of conviction would have been separately determined, as directed in U.S.S.G. § 1B1.1(d), and the resulting two sentences would have been "grouped" and run concurrently, as directed in U.S.S.G. §3D1.2 (noting that offenses covered by guidelines U.S.S.G. §§ 2K2.1 and 2D1.1 are "grouped"), and no separate sentencing enhancement would have been imposed on Count 1 for the conduct covered by Count 2.

9.      Thus, Mr. Bass' total sentence may have been lower if he had pled to both Count 1 and Count 2.

2

Further Affiant saith not.

CHRISTINE A. FREEMAN

STATE OF ALABAMA    )
MONTGOMERY COUNTY  )

  I, the undersigned authority, a Notary Public in and for said State of Alabama at Large, do hereby certify that **CHRISTINE A. FREEMAN**, whose name is signed to the foregoing Affidavit and who is known to me, acknowledged before me, on this day, that being informed of the contents of said instrument, she executed the same voluntarily, on the day the same bears date.

  **GIVEN** under my hand and official seal this November 16, 2007.

**(SEAL)**

Notary Public
My Commission Expires: _6/5/2008_

3

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Andrew Schiff, Esq., Assistant United States Attorney, Montgomery, AL 36104.

s/Christine A. Freeman
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL: (334) 834-2099
FAX: (334) 834-0353
E-Mail: Christine_Freeman@fd.org

UNITED STATES OF AMERICA v. MONTAY DECARLOS HODGE
UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA, EASTERN
DIVISION
313 F. Supp. 2d 1283;2004 U.S. Dist. LEXIS 6060
CRIMINAL ACTION NO. 3:03cr0144-T
April 9, 2004, Decided

**Disposition:** Objection to the pre-sentence investigation report was sustained .

**Counsel**
For Montay Decarlos Hodge, Defendant: Federal Defender, Joseph Peter Van Heest, LEAD ATTORNEYS, Middle District of Alabama, Montgomery, AL.
For United States of America, Plaintiff: Kent B. Brunson, LEAD ATTORNEY, U.S. Attorney's Office, Montgomery, AL.

**Judges:** MYRON H. THOMPSON, UNITED STATES DISTRICT JUDGE.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant filed an objection to his presentence investigation report (PSR) recommending that he receive an additional four offense levels under U.S. Sentencing Guidelines Manual § 2K2.1(b)(5) for possessing a firearm in connection with another felony offense.Court sustained defendant's objection to four-level enhancement of his base offense level for possessing weapon, where there was not evidence that he was engaged in drug trafficking, as he only possessed 4.43 grams of marijuana at time of arrest.

**OVERVIEW:** After defendant was arrested on an outstanding warrant, 4.43 grams of marijuana were found in his pants pocket, and a weapon and ammunition in his vehicle. Defendant pleaded guilty to 18 U.S.C.S. § 922(g)(1). Defendant's PSR recommended that he receive a four-level enhancement under U.S. Sentencing Guidelines Manual § 2K2.1(b)(5) for possession of a firearm in connection with the marijuana possession. The court sustained defendant's objection to the enhancement, holding that the government failed to meet its burden of proving that § 2K2.1(b)(5) applied to defendant.There was no evidence that defendant was engaged in drug trafficking, as he only had 4.43 grams of marijuana on him and he was only charged with simple possession under 21 U.S.C.S. § 844(a). It was not reasonable to conclude that defendant possessed his weapon to protect such a small amount of marijuana against theft. It was also not reasonable to find that the presence of the weapon in his vehicle "emboldened" him to possess a small amount of marijuana.

**OUTCOME:** The court sustained defendant's objection to his PSR's recommendation that his offense level be enhanced.

## LexisNexis Headnotes

*Criminal Law & Procedure > Criminal Offenses > Weapons > Possession > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Weapons > Possession > General Overview*

1YKCASES

1

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*Criminal Law & Procedure > Criminal Offenses > Weapons > Possession > General Overview*
*International Trade Law > General Overview*

See 18 U.S.C.S. § 922(g)(1).

*Criminal Law & Procedure > Criminal Offenses > Weapons > Possession > General Overview*
*Criminal Law & Procedure > Sentencing > Adjustments*
*Criminal Law & Procedure > Sentencing > Adjustments*
*Criminal Law & Procedure > Criminal Offenses > Weapons > Possession > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Weapons > Possession > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Weapons > Trafficking > Elements*
*Criminal Law & Procedure > Criminal Offenses > Weapons > Use > Commission of Another Crime*
*> Penalties*
*Criminal Law & Procedure > Sentencing > Adjustments*

See U.S. Sentencing Guidelines Manual § 2K2.1(b)(5).

*Criminal Law & Procedure > Criminal Offenses > Weapons > Possession > General Overview*
*Criminal Law & Procedure > Sentencing > Adjustments*
*Criminal Law & Procedure > Sentencing > Adjustments*
*Criminal Law & Procedure > Criminal Offenses > Weapons > Possession > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Controlled Substances > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Controlled Substances > Possession > General*
*Overview*
*Criminal Law & Procedure > Criminal Offenses > Controlled Substances > Possession > Simple*
*Possession > Penalties*
*Criminal Law & Procedure > Criminal Offenses > Weapons > Possession > General Overview*
*Criminal Law & Procedure > Sentencing > Adjustments*

A court can enhance a defendant's sentence only if the government proves by a preponderance of the evidence that U.S. Sentencing Guidelines Manual § 2K2.1(b)(5) applies. The court's inquiry into whether the § 2K2.1(b)(5) "specific-offense characteristic" properly applies is a fact-specific and fact-intensive one.

*Criminal Law & Procedure > Criminal Offenses > Weapons > Possession > General Overview*
*Criminal Law & Procedure > Sentencing > Adjustments*
*Criminal Law & Procedure > Sentencing > Adjustments*
*Criminal Law & Procedure > Criminal Offenses > Weapons > Possession > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Weapons > Possession > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Weapons > Possession > Elements*
*Criminal Law & Procedure > Sentencing > Adjustments*

A minority of circuits has analogized U.S. Sentencing Guidelines Manual § 2K2.1(b)(5) to U.S. Sentencing Guidelines Manual § 2D1.1(d)(1), and has adopted a broader reading of the "in connection with" requirement. Section 2D1.1(b)(1) provides a two-offense-level enhancement to defendants convicted of drug offenses if a dangerous weapon (including a firearm) was possessed. The commentary to § 2D1.1(b)(1) states that it should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. § 2D1.1(b)(l), comment. (n.3). Thus, under the minority view, § 2K2.1(b)(5) presumptively applies whenever the defendant possesses the firearm at the same time he commits another felony.

1YKCASES                                        2

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*Criminal Law & Procedure > Criminal Offenses > Weapons > Possession > General Overview*
*Criminal Law & Procedure > Sentencing > Adjustments*
*Criminal Law & Procedure > Sentencing > Adjustments*
*Criminal Law & Procedure > Criminal Offenses > Weapons > Possession > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Weapons > Possession > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Weapons > Possession > Penalties*
*Criminal Law & Procedure > Sentencing > Adjustments*
*Criminal Law & Procedure > Sentencing > Criminal History > Three Strikes*

The Eleventh Circuit Court of Appeals has rejected the majority interpretation of "in connection with," as used in U.S. Sentencing Guidelines Manual § 2K2.1(b)(5) but without adopting the minority view. The court was called upon to interpret the phrase "in connection with" as it appears in U.S. Sentencing Guidelines Manual § 4B1.4(b)(3)(A), the sentencing guideline applicable to defendants adjudged to be "armed career criminals" under 18 U.S.C.S. § 924(e).The Young court interpreted "in connection with" according to its ordinary and natural meaning and found that the term should be read quite expansively. In so doing, the court specifically rejected the "facilitated or potentially facilitated" interpretation adopted by the majority of appellate courts considering the phrase as it appeals in U.S. Sentencing Guidelines Manual § 2K2.1(b)(5). Although Young's holding was limited to the "armed career criminal" guideline, subsequent Eleventh Circuit decisions have relied on Young to reject the majority interpretation of § 2K2.1(b)(5).

*Criminal Law & Procedure > Criminal Offenses > Weapons > Possession > General Overview*
*Criminal Law & Procedure > Sentencing > Adjustments*
*Criminal Law & Procedure > Sentencing > Adjustments*
*Criminal Law & Procedure > Criminal Offenses > Weapons > Possession > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Weapons > Possession > General Overview*
*Criminal Law & Procedure > Sentencing > Adjustments*
*Criminal Law & Procedure > Sentencing > Guidelines*

Whether a "specific-offense characteristic" applies should be determined by careful consideration of the facts before the court. The categorical approach is also inconsistent with both the minority and minority interpretations of the "in connection with" language, for, under both interpretations, there is room for differing factual inferences; if the Sentencing Commission wanted U.S. Sentencing Guidelines Manual § 2K2.1(b)(5) to apply categorically whenever drugs and guns are present, it could have easily said so.

### Opinion

**Opinion by:**    MYRON H. THOMPSON

### Opinion

{313 F. Supp. 2d 1284} Defendant Montay Decarlos Hodge, a convicted felon, pleaded guilty to possessing a firearm in violation of 18 U.S.C.A. § 922(g)(1). Hodge is currently before the court for sentencing. In its pre-sentence investigation report, the United States Probation Office recommended that Hodge receive an additional four offense levels pursuant to U.S.S.G. § 2K2.1(b)(5) because he possessed the firearm "in connection with another felony offense," namely possession of 4.43 grams of marijuana. Hodge objects that the § 2K2.1(b)(5) "specific-offense characteristic" is inapplicable. For the reasons given below, the court holds that the government has not met its burden of proving that §

1YKCASES                                    3

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

2K2.1(b)(5) applies.

Hodge was arrested on February 13, 2002, following an altercation with police officers at the Goo Goo Car Wash in Opelika, Alabama. Officer Denise Ingram of the Opelika Police Department responded to a complaint about loud music at the car wash, and, when she arrived, she encountered Hodge cleaning his car's engine. When Ingram approached, Hodge got in his car and sat in the driver's seat. At that point, Ingram recognized Hodge from a photograph posted in the police department's briefing room; Hodge had an outstanding warrant for failing to appear and for resisting arrest. Hodge began to back his car out of the car wash, but, by that time, another officer--Officer Converse--had blocked Hodge's car's path with his patrol car. Hodge got out of his car and walked to the front of the car; he then returned to the driver's side of the car, reached into the car, turned down the volume on the radio, and removed the ignition key. He then locked the car.

Officer Ingram attempted to get Hodge's attention, but he did not respond. She then touched him on the arm and asked him what he was doing. Hodge quickly lifted his arm, and a struggle ensued between Hodge and Officers Ingram and Converse. Hodge was not subdued until two additional officers arrived. Officers Ingram and Converse smelled alcohol on Hodge's breath.

After Hodge was put in custody, the police officers conducted a search of his {313 F. Supp. 2d 1285} car and found the following: a loaded 9mm pistol under the driver's seat; a loaded 9mm magazine containing 15 rounds of ammunition in the glove box; and one box of 9mm cartridges containing seven live rounds under the driver's seat. After Hodge was taken to the Opelika City Jail, the officers found a clear plastic bag containing 4.43 grams of marijuana in his rear pants pocket.

A two-count indictment was filed on July 25, 2003, charging Hodge with one count of violating 18 U.S.C.A. § 922(g)(1), 1 the 'felon-in-possession' statute, and one count of possession of a controlled substance in violation of 21 U.S.C.A. § 844(a), the 'simple possession' statute. On October 7, 2003, Hodge pleaded guilty to the § 922(g)(1) count.

In its revised presentence-investigation report, the United States Probation Office calculated Hodge's total-offense level at 15. The base-offense level in Hodge's case is 14, U.S.S.G. § 2K2.1(a)(6), and the Probation Office found that Hodge should receive a four-level-offense enhancement based on the specific-offense characteristic in U.S.S.G. § 2K2.1(b)(5), which reads:

> "If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels. If the resulting offense level is less than 18, increase to level 18." The Probation Office applied the specific-offense characteristic because Hodge possessed the firearm "in connection with" possession of the marijuana found in his back pocket. The Probation Office then recommended that he receive a three-level downward adjustment for acceptance of responsibility. U.S.S.G. § 3E1.1(a) & (b).

Hodge objects to the § 2K2.1(b)(5) four-offense-level enhancement on the ground that the government has not proved that he possessed the pistol "in connection with" his possession of marijuana. The court is guided in its assessment by two non-controversial propositions. First, the court can enhance Hodge's sentence only if the government proves by a preponderance of the evidence that § 2K2.1(b)(5) applies. *United States v. Florence*, 333 F.3d 1290, 1294 (11th Cir. 2003). Second, the court's inquiry into whether the 2K2.1(b)(5) "specific-offense characteristic" properly applies is a fact-specific and fact-intensive one. Cf. *United States v. Saunders*, 318 F.3d 1257, 1267 (11th Cir. 2003) (determining whether U.S.S.G. § 2B6.1(b)(2) applies depends on totality of circumstances); *United States v. Morris*, 286 F.3d 1291, 1296 (11th Cir. 2002) (determining what constitutes "position

1YKCASES                                    4

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

of trust" within in meaning of U.S.S.G. § 3B1.3 is highly dependent on specific facts of each situation). **{313 F. Supp. 2d 1286}** A.

As this court has discussed previously, *United States v. Hunter*, 980 F. Supp. 1439, 1447 (M.D. Ala. 1997) (Thompson, J.), there is a split among the Courts of Appeals as to how to interpret § 2K2.1(b)(5). The majority of appellate courts has held that the phrase "in connection with" in § 2K2.1(b)(5) should be read in the same way as the United States Supreme Court in *Smith v. United States*, 508 U.S. 223, 237-38, 113 S. Ct. 2050, 2058-59, 124 L. Ed. 2d 138 (1993), read the phrase "in relation to" as it appears in 18 U.S.C.A. § 924(c)(1), which requires the imposition of specified penalties if the defendant, "during and in relation to any crime of violence or drug trafficking crime[,] uses or carries a firearm." *United States v. Spurgeon*, 117 F.3d 641, 644 (2d Cir. 1997); *United States v. Wyatt*, 102 F.3d 241, 247 (7th Cir. 1996); *United States v. Nale*, 101 F.3d 1000, 1004 (4th Cir. 1996); *United States v. Thompson*, 32 F.3d 1, 7 (1st Cir. 1994); *United States v. Routon*, 25 F.3d 815, 818 (9th Cir. 1994). Under this interpretation, the § 2K2.1(b)(5) enhancement properly applies when the government proves that "the weapon facilitated or potentially facilitated the felonious conduct." *Nale*, 101 F.3d at 1004. The enhancement does not apply "where the firearm's presence is merely coincidental." *Wyatt*, 102 F.3d at 247.

A minority of circuits has analogized § 2K2.1(b)(5) to U.S.S.G. § 2D1.1(d)(1), and has adopted a broader reading of the "in connection with" requirement. *United States v. Regans*, 125 F.3d 685, 687 (8th Cir. 1997); *United States v. Condren*, 18 F.3d 1190, 1197 (5th Cir. 1994). Section 2D1.1(b)(1) provides a two-offense-level enhancement to defendants convicted of drug offenses "if a dangerous weapon (including a firearm) was possessed." The commentary to § 2D1.1(b)(1) states that it "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b)(l), comment. (n.3). Thus, under the minority view, § 2K2.1(b)(5) presumptively applies whenever the defendant possesses the firearm at the same time he commits another felony.

The Eleventh Circuit Court of Appeals has rejected the majority interpretation of "in connection with," but without adopting the minority view. In *United States v. Young*, 115 F.3d 834 (11th Cir. 1997), the court was called upon to interpret the phrase "in connection with" as it appears in U.S.S.G. § 4B1.4(b)(3)(A), the sentencing guideline applicable to defendants adjudged to be "armed career criminals" under 18 U.S.C.A. § 924(e). 2 The *Young* court interpreted "in connection with" according to its "ordinary and natural meaning" and found that the term should be read "quite expansively." Young, 115 F.3d at 837. In so doing, the court specifically rejected the "facilitated or potentially facilitated" interpretation adopted by the majority of appellate courts considering the phrase as it appeals in § 2K2.1(b)(5). *Id.* at 838. Although Young's holding was limited to **{313 F. Supp. 2d 1287}** the "armed career criminal" guideline, subsequent Eleventh Circuit decisions have relied on *Young* to reject the majority interpretation of § 2K2.1(b)(5). *E.g. United States v. Rhind*, 289 F.3d 690, 695 (11th Cir. 2002).

B.

This court finds that, even under the more expansive, minority view, the government has not, in the court's assessment of the evidence, carried the burden of proving that § 2K2.1(b)(5) applies. The court reaches this conclusion after an independent assessment of the facts of this case and after an instructive, but not determinative, comparison of the facts of this case with those set forth in decisions of the Eleventh Circuit and the trial courts within the Eleventh Circuit that have directly addressed whether § 2K2.1(b)(5)--and other specific-offense characteristics that use the same "in connection with" language--should apply to defendants who simultaneously possessed a firearm and some other contraband.

1YKCASES

5

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

In reviewing the Eleventh Circuit cases that have upheld lower-court decisions regarding whether § 2K2.1(b)(5) should be applied, this court has been mindful that the appellate court was acting in a deferential capacity as to the lower courts' findings of facts; in other words, the appellate court was not necessarily saying that a factual record would support *only* the ultimate factual conclusion reached by the district court but rather the record could reasonably support it. The appellate court was not necessarily saying that a court, faced with the same evidence, could not reach a contrary ultimate factual conclusion. Thus, subject to the clearly erroneous rule, an appellate court's upholding of a factual conclusion based on certain evidence would no more be binding on a trial court facing the same evidence than it would be on a jury (that would not have had the benefit of the appellate court's view on the adequacy of facts) hearing the same evidence. Otherwise, there would be the arbitrary result that the ultimate factual conclusion (which arguably could go either way) of the trial court, whose case was first to reach, and be upheld by, the appellate court on the adequacy-of-the-evidence issue, would be binding on all other trial courts confronted with the same facts.

As stated, this court has considered two appellate cases in applying the minority view of § 2K2.1(b)(5). These case have two things in common. First, they involve more than simple illegal possession, and, second, the decisions in the cases cite the defendants' potential use of the firearms to protect themselves or their contraband as the connection between the firearm and the illegal possession. 3

In *Rhind,* the Eleventh Circuit affirmed that § 2K2.1(b)(5) applied to a group of defendants who were arrested for producing and passing counterfeit bills. At the time of the defendants' arrest, officers searched their car and found a pistol under the back seat and an unloaded shotgun, a **{313 F. Supp. 2d 1288}** color printer, and counterfeit money in the trunk. 289 F.3d at 692. The court reasoned that "the mere availability and appearance of the firearms could have served to promote the defendants' prolonged criminal episode." *Id.* at 695. The court also wrote that "it would be reasonable to conclude that the presence of the firearms protected the counterfeit money from theft during the execution of the felony." *Id.*

In *Hunter,* this court held that § 2K2.1(b)(5) applied to a defendant who pleaded guilty to one § 922(g)(1) count and four counts of possessing with intent to distribute various controlled substances in violation of 21 U.S.C.A. § 841(a) (1). The gun at issue was found in a room at the defendant's house, where the police also found "hundreds of plastic bags commonly associated with drug transactions, a jar containing a substance that may be used to 'cut,' or dilute, drug aliquots to increase their volume, and records of drug transactions." 980 F. Supp. at 1441. Based on "the presence of both the guns and the instrumentalities of drug trafficking in the same room of Hunter's residence" and the fact that the gun was in the same dresser as the plastic bags and records, this court held that the gun "at least potentially facilitated Hunter's drug-distribution activities". *Hunter,* 980 F. Supp. at 1448. This court also wrote that "Hunter would have been comforted by the knowledge that he enjoyed easy access to the loaded weapon[] should any perceived need to defend himself or otherwise further his felonious activities arise." *Id.*

Hodge's case is distinguishable. First, in both *Rhind* and *Hunter,* the defendants were engaged in more than simple possession of contraband. The defendants in *Rhind* were producing counterfeit bills, and the defendant in *Hunter* was dealing drugs. There is no evidence that Hodge was engaged in drug trafficking. Indeed, he had only 4.43 grams of marijuana, and he was only charged with simple possession under § 844(a). Second, in both *Rhind* and *Hunter,* the courts' rationale for applying the enhancement was that the firearm would be used to protect the defendants' contraband. This is reasonable when the defendants are making counterfeit money or distributing drugs: they are dealing with customers and suppliers, and money is changing hands, both of which raise the real possibility of theft or other violence. It is not reasonable, however, to conclude that Hodge possessed his pistol to

1YKCASES                                             6

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

protect less than four-and-a-half grams of marijuana.

The same pattern of facts and reasoning appears in the cases in which the Eleventh Circuit has applied two analogous guideline provisions. In *United States v. Rodriguez-Matos*, 188 F.3d 1300 (11th Cir. 1999), the defendant was convicted of making, possessing, and selling counterfeit money, and the court upheld the district court's application of § 2B5.1(b)(3), 4 which increases a defendant's offense level by two "if a dangerous weapon (including a firearm) was possessed in connection with the offense." The defendant was arrested after a high-speed chase that began when police attempted to arrest him after observing him sell fake currency to a confidential informant; during the chase, the defendant threw a pistol out his car window. 188 F.3d at 1302. The court held that "it is reasonable to conclude here that [the defendant] possessed the pistol to prevent theft during a close, face-to-face, hand-to-hand encounter with a person he apparently did not know well." *Rodriguez-Matos*, 188 F.3d at {313 F. Supp. 2d 1289} 1309. Again, Hodge's case is distinguishable: there is no evidence he was involved in any sales of marijuana, and thus it would not be "reasonable to conclude here that [he] possessed the pistol to prevent theft." *Id.*

Finally, in *United States v. Gainey*, 111 F.3d 834, 837 (11th Cir. 1997), the court upheld the application of U.S.S.G. § 4B1.4(b)(3)(A), which increases the offense level for "armed career criminals" if they "used or possessed the firearm or ammunition in connection with either a crime of violence . . . or a controlled substance offense." As with the cases discussed above, the defendant in *Gainey* was engaged in drug distribution. He was arrested with 55 capsules of heroin and nearly $ 400 in cash, and he was ultimately convicted of possession with the intent to distribute. 111 F.3d at 837. The court's rationale again focused on the defendant's distribution activities: "the presence of the gun potentially emboldened Gainey to undertake illicit drug sales." *Id.* In Hodge's case, it is not reasonable to find that the presence of a pistol under the seat of his car "emboldened" him to possess a small amount of marijuana.

There are a couple of cases from outside Eleventh Circuit which have held that § 2K2.1(b)(5) applies to defendants who possessed, along with a firearm, only a very small amount of drugs, that is, an amount consistent with personal use. In *United States v. Condren*, 18 F.3d 1190 (5th Cir. 1994), the Fifth Circuit Court of Appeals affirmed the application of the offense characteristic to a defendant who was arrested in his bedroom where the police found .1 gram of crack cocaine and 33.3 grams of marijuana seeds on his desk and a .22 caliber revolver in a locked drawer. The court specifically rejected the argument that § 2K2.1(b)(5) should not apply because of the small amount of drugs. 18 F.3d at 1199. The court's rationale in deciding that offense characteristic applied, however, was very similar to the one in the Eleventh Circuit cases cited above: the defendant could have used the guns to protect himself and his drugs from threats arising out of his distribution activities. *Id.* at 1198-99 ("it must be kept in mind that [the defendant] was actively involved in distributing cocaine; it would be more than reasonable to infer that he would know . . . that other persons would know . . . that he kept drugs in his home, and that he would be concerned that those persons might seek to steal them"); *see also id.* at 1200 (the gun "was readily available to him to protect his drug-related activities").

In *United States v. Regans*, 125 F.3d 685 (8th Cir. 1997), the Eighth Circuit Court of Appeals upheld application of § 2K2.1(b)(5) to a defendant who was arrested with a .22 caliber pistol and .29 grams of heroin on his person. In response to the defendant's argument that the enhancement should not apply to him because he possessed only enough heroin for personal use, the court began by stating that the enhancement is based in part on the "the increased risk of violence whenever guns are in the possession of persons engaged in committing drug felonies." 125 F.3d at 686. The court then wrote that "when a firearm is carried during a drug offense, including a possession-for-use offense, the drug felon has the ability to use the weapon in connection with his drug offense" because "theft is a close and ever present partner of illegal drugs." *Id.* The court concluded that "there are many ways in which

1YKCASES                                           7

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

the weapon {313 F. Supp. 2d 1290} can facilitate the drug offense and dangerously embolden the offender." *Id.* at 687.

The court is not persuaded by *Condren* and *Regans* that § 2K2.1(b)(5) applies to Hodge. First, the facts of *Condren* are more closely analogous to *Rhind* and *Hunter* than to those in this case because the *Condren* defendant "was actively involved in distributing cocaine." 18 F.3d at 1198. Thus, the inference that the defendant possessed his gun to protect himself from theft by people to whom he sold drugs, which was reasonable to the Fifth Circuit, is not reasonable in this case. There is no evidence that Hodge was selling drugs such that he had to be concerned about theft.

Second, while the facts of *Regans* are more analogous to the present case, the court is not persuaded by the Eighth Circuit's reasoning. That court's conclusion that there was a connection between the defendant's gun and his drugs was based on the assumption that drugs and violence always go together. In other words, the court based its conclusion that the required nexus existed between the defendant's gun and his drugs not on the facts of the case but on the assumption that the two always go together. This court was willing to rely on this assumption when there was evidence of drug dealing, *Hunter,* 980 F. Supp. at 1448, but it is not willing to do so where there is only evidence of personal use.

Further, *Regans*'s reasoning results in essentially a categorical rule that whenever a defendant possesses both a gun and drugs, whatever the amount, § 2K2.1(b)(5) will apply. This is inconsistent with the requirement that the government *prove* a connection between a gun and drugs by a preponderance of the evidence. *Florence,* 333 F.3d at 1294. Such a categorical rule is also inconsistent with the requirement that the court's inquiry should be fact-specific. *See Saunders,* 318 F.3d at 1267; *Morris,* 286 F.3d at 1296. Whether a "specific-offense characteristic" applies should be determined by careful consideration of the facts before the court. The categorical approach is also inconsistent with both the minority and minority interpretations of the "in connection with" language, for, under both interpretations, there is room for differing factual inferences; if the Sentencing Commission wanted § 2K2.1(b)(5) to apply categorically whenever drugs and guns are present, it could have easily said so.

Finally, and perhaps most significantly, common sense dictates that Hodge did not have the gun "in connection with" the small amount of marijuana found on him. While marijuana for even personal use is illegal, its prevalence, including even local legalization in some areas of the country, and the ease with which it can be obtained are common knowledge; in a small, individual personal-use amount, it is simply not the type of drug, absent other inculpating circumstances, for which one would need to be armed to protect it or one's self. The court emphasizes, however, that it does not hold that § 2K2.1(b)(5) can *never* apply when a defendant possesses only enough drugs for personal use; the guideline's application would depend on, among other things, the type of drug, the amount, whether the defendant had other drug habits, and the circumstances under which the defendant was using the drug.

The court is well aware of the frequent connection between drugs and guns. However, the court is not convinced in this case that Hodge's illegal possession of his {313 F. Supp. 2d 1291} gun was "in connection with" his possession of marijuana. The court, therefore, holds that § 2K2.1(b)(5) does not apply to him, and the court will thus sustain his objection to the pre-sentence investigation report.

Hodge will be sentenced in accordance with this opinion.

DONE, this the 9th day of April, 2004.

/s/ Myron H. Thompson

1YKCASES                                    8

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

UNITED STATES DISTRICT JUDGE

**Footnotes**

1

Section 922(g)(1) provides that

"It shall be unlawful for any person--who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."Hodge was convicted of a crime punishable by a term of imprisonment exceeding one year on or about December 3, 1998, in the Circuit Court of Lee County, Alabama.

2

An "armed career criminal" is a defendant who is convicted under 18 U.S.C.A. § 922(g) and who "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C.A. § 924 (e). Section 4B1.4(b)(3)(A) provides that the offense level for an armed career criminal shall be no less than 34 "if the defendant used or possessed the firearm or ammunition in connection with either a crime of violence . . ., or a controlled substance offense . . ., or if the firearm possessed by the defendant was of a type described in 26 U.S.C.A. § 5845."

3

The Eleventh Circuit has also upheld the application of § 2K2.1(b)(5) to defendants who actively used or attempted to use the firearm that they illegally possessed in the commission of another felony. *United States v. Jackson*, 276 F.3d 1231, 1234-35 (11th Cir. 2001) (defendant reached for hidden gun while resisting arrest); *United States v. Whitfield*, 50 F.3d 947, 949 (11th Cir. 1995) (burglary defendant threatened victim's neighbor with stolen gun during his escape and lay in wait for police with the gun concealed).

These cases are not applicable because there is no allegation that Hodge actively used or attempted to use his pistol.

4

This specific-offense characteristic is now found at § 2B5.1(b)(4).

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

---

No. 04-3810

---

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Western District of Missouri. |
| | * | |
| Michael Allen Lighthill, | * | **[UNPUBLISHED]** |
| | * | |
| Defendant - Appellant. | * | |

---

Submitted: June 20, 2005
Filed:  June 27, 2005

---

Before LOKEN, Chief Judge, MORRIS SHEPPARD ARNOLD and COLLOTON, Circuit Judges.

---

PER CURIAM.

Michael Allen Lighthill pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2).  The Presentence Investigation Report (PSR) recommended that the court impose a four-level sentencing enhancement under the then-mandatory Guidelines because Lighthill possessed the firearm in connection with a felony drug offense, based on evidence that Lighthill was arrested with the firearm in a car stocked with methamphetamine, methamphetamine precursors, and drug paraphernalia. See U.S.S.G. § 2K2.1(b)(5). In the district court, Lighthill objected to the enhancement and to the pertinent factual



statements in the PSR.    He also argued that the enhancement would be unconstitutional under Blakely v. Washington, 124 S. Ct. 2531 (2004), because the facts underlying the enhancement were neither admitted nor charged in the indictment.    The district court overruled these objections and imposed the enhancement, which increased Lighthill's applicable Guidelines range from 51 to 63 months in prison to 77 to 96 months in prison. The court sentenced Lighthill to 77 months in prison, the bottom of the applicable mandatory range.

On appeal, Lighthill argues that the district court violated his Sixth Amendment rights under Blakely, a claim governed by the Supreme Court's supervening decision in United States v. Booker, 125 S. Ct. 738 (2005).  Sentencing Lighthill under the mandatory Guidelines regime then in effect was error under Booker.  United States v. Pirani, 406 F.3d. 543, 548-49 (2005).  As Lighthill preserved this claim in the district court, the government must prove that the error was harmless.  United States v. Haidley, 400 F.3d 642, 644-45 (8th Cir. 2005).

The government argues that Lighthill forfeited his Blakely claim by failing to argue that the district court should not treat the Guidelines as mandatory.  This argument is foreclosed by our controlling en banc decision in Pirani, 406 F.3d at 550.  The government further argues that there was no Sixth Amendment error because Lighthill did not "seriously dispute" the facts underlying the enhancement, making the district court's findings of fact on the issue "essentially uncontradicted." As we explained in Pirani, this argument, even if true, does not eliminate the Booker error.

The government's post-Booker brief made no attempt to argue that the Booker error was harmless, and after careful review of the sentencing record, we are unable to conclude that the error was harmless. Accordingly, the sentence is vacated, and the case is remanded for resentencing in light of United States v. Booker.

-2-

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

---

### No. 04-3105

---

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Ramon T. Morales, | * | Southern District of Iowa. |
| | * | |
| Appellant. | * | [UNPUBLISHED] |

---

Submitted: June 7, 2005
Filed: June 9, 2005

---

Before SMITH, FAGG, and MAGILL, Circuit Judges.

---

PER CURIAM.

Ramon Morales appeals the sentence the district court imposed after he pleaded guilty to firearms charges. We reverse.

Morales pleaded guilty to being a felon in possession of a firearm and to possessing a firearm with an obliterated serial number, in violation of 18 U.S.C. §§ 922(g)(1), (k), and 2. Morales disputed the recommended imposition of two sentencing enhancements: a 2-level enhancement under U.S.S.G. § 2K2.1(b)(1)(A) because Morales had possessed three firearms, and a 4-level enhancement under U.S.S.G. § 2K2.1(b)(5) because Morales had possessed the firearms in connection





with another felony offense.  He argued that neither enhancement could be imposed absent a finding by a jury, relying on Blakely v. Washington, 124 S. Ct. 2531 (2004), and also argued that the 4-level enhancement was not supported by the evidence.  The district court overruled Morales's objections, finding that Morales had admitted at his change-of-plea hearing that he possessed the third firearm, and finding that Morales had possessed the firearms in connection with another felony offense.  The court sentenced Morales to 84 months in prison on the felon-in-possession charge, to a concurrent 60 months in prison (the statutory maximum) on the serial-number-obliteration charge, and to concurrent 2-year terms of supervised release.  On appeal, Morales reiterates his Blakely argument.

Morales's Blakely argument in the district court preserved the argument that the enhancements violated his constitutional rights as enunciated in United States v. Booker, 125 S. Ct. 738, 756 (2005) ("[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty . . . must be admitted by the defendant or proved to a jury beyond a reasonable doubt").  See United States v. Pirani, 406 F.3d 543, 549 (8th Cir. 2005) (en banc) (arguing Blakely error in district court preserves argument that Booker error occurred).  Because it is undisputed that Morales did not admit to using the firearms in connection with another felony offense, the basis of the 4-level enhancement, we vacate his sentence and remand for resentencing in accordance with Booker.  See United States v. Adams, 401 F.3d 886, 900 (8th Cir. 2005) (reversing and remanding where defendant preserved Sixth Amendment issue for review).  We need not otherwise address the propriety of the district court's Guidelines calculations at this time.  See United States v. Huber, 404 F.3d 1047, 1063 (8th Cir. 2005) (because on remand district court will "be operating under a new sentencing regime," declining to address arguments regarding improper Guidelines calculations; consideration of objections to district court's original Guidelines calculations would be premature).

-2-

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PATRICK L. BASS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No.   3:07-cv-0887-WHA** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

### PETITIONER'S EXHIBIT LIST

**COMES NOW** the Petitioner, Patrick L. Bass, by and through the undersigned counsel and lists the following exhibits which may be used in the above styled cause:

1.  Indictment

2.  Plea Agreement

3.  Presentence Investigation Report

4.  Letter dated 10-12-2006

5.  Affidavit of Christine Freeman

6.  Case law (U.S. v. Hodge)

7.  Case law (U.S. v. Lighthill)

8.  Case law (U.S. v. Morales)

Respectfully submitted this 5th day of June, 2008.

s/ Richard K. Keith
**RICHARD K. KEITH (KEI003)**
Attorney for Defendant
**KEITH & DUBIN, P.C.**
22 Scott Street
Montgomery, AL  36104-4012
Telephone: (334) 264-6776
Facsimile:   (334) 265-5362

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Andy Schiff, AUSA
Post Office Box 197
Montgomery, AL  36101-0197

s/ Richard K. Keith
**OF COUNSEL**

2